IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ARKEMA INC., et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|    v. | ) CIVIL ACTION 19-0296-WS-MU |
| | ) |
| EMERSON PROCESS | ) |
| MANAGEMENT, LLLP, et al., | ) |
| | ) |
|    Defendants. | ) |

**ORDER**

This matter is before the Court on the motion of the entity defendant ("Emerson") to dismiss. (Doc. 20). The plaintiffs have filed a response and Emerson a reply, (Docs. 28, 30), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

**BACKGROUND**

According to the complaint, (Doc. 1), the plaintiffs hired Emerson to perform programming and configuration services for a control system in a manufacturing unit. Emerson sent co-defendant Nilesh Chaudhari to perform this work. Chaudhari took unauthorized photos and videos on his cell phone documenting the plaintiffs' secret new technology. Emerson and Chaudhari have refused to cooperate with the plaintiffs' attempts to determine what images Chaudhari captured and what he may have done with them.

The complaint asserts eight claims for relief: (1) the federal Trade Secrets Act; (2) the Alabama Trade Secrets Act ("ATSA"); (3) conversion; (4) negligent/wanton training/supervision; (5) *respondeat superior*; (6) the Alabama Digital Crime Act ("ADCA"); (7) the federal Computer Fraud and Abuse Act ("CFAA"); and (8) breach of

contract.  (Doc. 1 at 27-32).  Emerson seeks the dismissal of Counts Three through Seven.

## DISCUSSION

**I. Conversion.**

Emerson argues that ATSA preempts this claim.  The plaintiffs respond that ATSA does not preempt conversion claims in general or their claim in particular.

ATSA provides a cause of action "for misappropriation of [a] trade secret."  Ala. Code § 8-27-3.  "Those provisions of this chapter that are inconsistent with the common law of trade secrets supersede the common law; otherwise, this chapter should be construed as consistent with the common law of trade secrets."  *Id*. § 8-27-6.  The accompanying comment explains that "[t]he act is intended to codify and to modify the common law of trade secrets in Alabama.  Where the act codifies, pre-existing sources may shed light on the meaning of the statute.  There is no intention, however, to supersede other areas of the law."

The meaning of Section 8-27-6 and its comment is open to interpretation.  The Alabama Supreme Court has supplied the following interpretation:  "[T]he legislature intended for the Act to replace common law tort remedies for the misappropriation of trade secrets."  *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991).  Again, "existing common law tort theories of recovery have been replaced by the provisions of the Act …."  *Id*.  The plaintiff in *Allied Supply* alleged the defendants "had breached their fiduciary duty by … misappropriating confidential documents" that the plaintiff "characterized as 'trade secrets.'"  *Id*. at 34, 37.  Based on its reading of ATSA, the Supreme Court reversed the trial court's ruling "that Allied could pursue a common law misappropriation cause of action."  *Id*.

In this diversity case, the Court is bound to follow controlling precedent from the Alabama Supreme Court.  *State Farm Mutual Automobile Insurance Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011).  In assessing the preemptive scope of Section 8-27-

6 as applied to this case, *Allied Supply* is that controlling precedent. *Allied Supply* establishes the principle that any common law tort claim that, whatever its name, provides a theory of recovery for the misappropriation of a trade secret is preempted by ATSA. Thus, as in *Allied Supply*, a misappropriation of a trade secret accomplished by a breach of fiduciary duty is still a misappropriation of a trade secret, which must be redressed under ATSA and not under the common law theory of breach of fiduciary duty.

The same necessarily holds true for conversion. A misappropriation of a trade secret accomplished by a conversion is still a misappropriation of a trade secret and must be redressed under ATSA and not under the common law theory of conversion. Because Count Three alleges that Chaudhari converted a trade secret, it asserts a common law tort theory of recovery for the misappropriation of a trade secret and cannot proceed.

The plaintiffs, relying on the decision of a sister court, deny that conversion claims can ever be preempted by ATSA. (Doc. 28 at 11-12). In *Acoustic Artistry, LLC v. Peavey Electronics Corp.*, 2013 WL 12250381 (N.D. Ala. 2013), the Court focused on *Allied Supply*'s reference to a "common law misappropriation cause of action" to conclude that any claim not calling itself a misappropriation claim (including a claim for conversion of a trade secret) is not preempted. *Id*. at *8. As shown above, however, *Allied Supply* did not use the quoted phrase to restrict preemption to a single cause of action traveling under a particular name but rather as a shorthand to describe any tort claim brought to redress the misappropriation of a trade secret.

The *Acoustic Artistry* Court found support for its position in two state cases that, post-*Allied Supply*, allowed common law tort claims (including conversion) to proceed alongside an ATSA claim. 2013 WL 12250381 at *8 (citing *Sevier Insurance Agency, Inc. v. Willis Corroon Corp.*, 711 So. 2d 995(Ala. 1998) and *Soap Co. v. Ecolab, Inc.*, 646 So. 2d 1366 (Ala. 1994)).[1] In neither case, however, was any preemption argument asserted, and the Supreme Court's failure to address an issue that was not before it furnishes no grounds for reading *Allied Supply* more narrowly than its text requires.

---

[1] Both these cases were overruled in part on other grounds by *White Sands Group, LLC v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009).

The plaintiffs next propose that, even if ATSA preempts a claim for conversion of an intangible trade secret, it does not preempt a claim for conversion of a "physical item" that depicts a trade secret. (Doc. 28 at 11).[2] For this proposition, they rely on *Southern Field Maintenance & Fabrication LLC v. Killough*, 2019 WL 360515 (M.D. Ala. 2019) ("*Southern Field II*").

The *Southern Field II* Court recapitulated its ruling in *Southern Field Maintenance & Fabrication LLC v. Killough*, 2018 WL 4701782 (M.D. Ala. 2018) ("*Southern Field I*"). The *Southern Field I* Court agreed with the defendants that a claim asserting the conversion of trade secret information is preempted. *Id*. at *7. But it noted that the *Soap* Court permitted both a conversion claim and an ATSA claim to proceed when the converted property consisted of documents containing the asserted trade secrets, and from this circumstance it extrapolated that a conversion claim involving such "tangible property" is not preempted by ATSA. *Id*. As noted, however, the *Soap* Court was not asked whether the conversion claim was preempted, and did it not purport to address or resolve any such question; it is therefore irrelevant to the inquiry.

*Allied Supply* is the only Alabama decision to address the preemptive scope of Section 8-27-6, and it does not establish or support the proposition that conversion claims are preempted only when no tangible property is involved. On the contrary, by declaring that ATSA "replace[s] common law tort remedies for the misappropriation of trade secrets," 585 So. 2d at 37, *Allied Supply* identifies the relevant question as whether the plaintiff is seeking to remedy the misappropriation of its trade secrets, not whether the misappropriation involved tangible property.

Finally, the plaintiffs argue that, even if the mere fact that trade secrets are embedded in tangible property is insufficient to escape preemption, Count Three includes a claim for conversion of the electronic files independently of the trade secrets depicted in those files. (Doc. 28 at 10-11).

---

[2] The plaintiffs identify the "physical item" in this case as the "electronic files" created by Chadhauri's cell phone. (Doc. 28 at 10-11). As Emerson does not question the physicality of an electronic file, neither does the Court.

4

It may be, as the *Southern Field II* Court suggested, that a conversion claim directed at tangible property can escape preemption to the extent such property has value apart from the trade secrets it reflects. 2019 WL 360515 at *5.[3] The Court need not resolve that question, because it is pellucidly clear from the complaint and the plaintiffs' brief that the electronic files created from Chaudhari's images have value to the plaintiffs solely because they capture what the plaintiffs consider to be trade secrets.[4] However the plaintiffs try to dress it up, their conversion claim seeks to remedy the alleged misappropriation of their trade secrets, and that is precisely what *Allied Supply* forbids.

The Court considers *Allied Supply* unambiguously on point and therefore controlling. *Duckworth*, 648 F.3d at 1224. Although *Allied Supply* does not mention conversion claims by name, it lays down a principle applicable to all common-law tort claims, which necessarily includes conversion claims. Even were *Allied Supply* deemed not controlling because it does not expressly address conversion claims, the Court's duty would be to "anticipate how the [Alabama] Supreme Court would decide this case," *id.*, and *Allied Supply* leaves no doubt on that score.

Because the principle enunciated in *Allied Supply* resolves the question, and because there are no additional relevant Alabama decisions, it is unnecessary to look to other sources. The Court nevertheless notes that its ruling is in accord with that of sister courts in this state,[5] as well as with the heavy weight of authority in other jurisdictions that have, like Alabama, passed a version of the Uniform Trade Secrets Act.[6]

---

[3] For example, an industrial machine built with trade secrets presumably has value apart from the trade secrets themselves, in the form of its manufacturing capability.

[4] Nor is it easy to imagine how the plaintiffs could contend that the electronic files created by Chaudhari on his own cell phone are the plaintiffs' property, so as to be capable of conversion, without relying on the business information reflected in the files.

[5] *Madison Oslin, Inc. v. Interstate Resources, Inc.*, 2012 WL 4730877 at *9 (N.D. Ala. 2012); *Cordova Castings, Inc. v. ISG Resources, Inc.*, 2005 WL 8157948 at *3 (N.D. Ala. 2005).

[6] *See New South Equipment Mats, LLC v. Keener*, 989 F. Supp. 2d 522, 533 n.6 (S.D. Miss. 2013) (collecting cases).

## II.  Negligent/Wanton Training/Supervision.

Count Four alleges that "Chaudhari has committed a tortious or wrongful act under Alabama law, as a consequence of Emerson's negligent, reckless, or wanton training or supervision of him …" (Doc. 1 at 28). Emerson argues that this claim is also preempted by ATSA.

As with their conversion claim, the plaintiffs insist that *Allied Supply* extends no further than to forbid "misappropriation" claims, specifically, breach of fiduciary duty. (Doc. 28 at 12). For reasons explained in Part I, the Court rejects this reading.

The only "tortious or wrongful act [of Chaudhari] under Alabama law" that the complaint alleges is his taking images of the plaintiffs' trade secrets. The plaintiffs expressly seek to hold Emerson liable for the "resulting harm" to them from Chaudhari's conduct. (Doc. 28 at 14). Count Four is a common law tort claim, and it patently is brought to redress Chaudhari's alleged misappropriation of trade secrets; it is therefore captured by *Allied Supply*.

The plaintiffs suggest that Count Four is based also on Chaudhari's refusal to surrender his cell phone and computer to the plaintiffs. (Doc. 28 at 14). Assuming without deciding that an employee's failure to cooperate is itself a tort or other wrong under Alabama law sufficient to support a claim against the employer for negligent/wanton training/supervision, the claim remains one to redress Chaudhari's alleged misappropriation of trade secrets, and it therefore remains preempted.

## III.  *Respondeat Superior*.

*Respondeat superior* is a theory for holding the employer or master liable for the wrong of the employee or servant. Because *respondeat superior* liability is derivative, it cannot attach if the underlying claim against Chaudhari is barred by preemption. The

6

plaintiffs so concede.  (Doc. 28 at 15).  Because the conversion claim against Chaudhari is preempted, Emerson can have no *respondeat superior* liability under that claim.[7]

### IV. Computer Fraud and Abuse Act.

The CFAA hinges liability on the defendant "having knowingly accessed a computer without authorization or exceeding authorized access."  18 U.S.C. § 1030(a)(1).  The CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  Emerson argues that the complaint fails to allege that Chaudhari acted without authority or exceeded his authorized access in capturing the images made the subject of this lawsuit.  (Doc. 20 at 4-6).

Most of the complaint's allegations regarding Chaudhari's acquisition of images concern his photos and videos of various portions of the plaintiffs' manufacturing equipment.  (Doc. 1 at 15-16).   However, Chaudhari is also accused of taking photographs of the "live" parameters of the manufacturing process as they were displayed on computer screens on the plaintiffs' control room console.  (*Id*. at 14, 16, 21).[8]  The complaint acknowledges that Chaudhari had authorized access to this information, as it was his assignment to assist in final testing and initial batch production using the control system programmed and configured by Emerson.  (*Id*. at 10-11, 12, 14).  However, "[s]uch access was for the limited and sole purpose of assisting [the plaintiffs] in making refinements to the [control] [s]ystem and for no other reason," and Chaudhari was repeatedly instructed not to take photos of anything, which would necessarily include the computer screens.  (*Id*. at 12-14).

---

[7] *Respondeat superior* is inapplicable to the plaintiffs' claim for negligent/wanton training/supervision, because the employer's liability under such a claim is direct, not derivative. *E.g., Ex parte Henry*, 770 So. 3d 76, 82 (Ala. 2000).

[8] The complaint also mentions Chaudhari being seen briefly sitting "near a computer terminal," (Doc. 1 at 15), but no allegation is made that he accessed the computer.

In *United States v. Rodriguez*, 628 F.3d 1258 (11th Cir. 2010), the defendant was authorized to access certain computerized information for business reasons but not for non-business reasons, and this limitation on authorization was communicated to the defendant. When the defendant nevertheless obtained the information for a non-business reason, he "exceeded his authorized access and violated the Act." *Id*. at 1263. Though there have been murmurings against *Rodriguez*'s construction of Section 1030(e)(6), it remains binding. *Maye v. United States*, 769 Fed. Appx. 882, 884 (11th Cir. 2019); *EarthCam, Inc. v. OxBlue Corp.*, 703 Fed. Appx. 803, 808 n.2 (11th Cir. 2017).

Under *Rodriguez*, it appears clear that Chaudhari's alleged collection of images of the computer screens' readings of live manufacturing parameters, despite knowing this was expressly forbidden by the plaintiffs, exceeded his authorized access. The plaintiffs relied on *Rodriguez* in their opposition brief, yet Emerson ignored the decision in its reply. That silence is fatal to their motion.

**V.  Alabama Digital Crime Act.**

"A person who acts without authority or who exceeds authorization of use commits the crime of computer tampering by knowingly" engaging in certain specified conduct. Ala. Code § 13A-8-112(a). "Exceeds authorization of use" is defined as "[a]ccessing a computer, computer network, or other digital device with actual or perceived authorization, and using such access to obtain or alter information that the accessor is not entitled to obtain or alter." *Id*. § 13A-8-111(11). Emerson again argues the complaint fails to allege that Chaudhari acted without authority or exceeded his authorization of use. (Doc. 20 at 4-6).

Emerson identifies no case construing the scope of Section 13A-8-111(11); instead, it relies on cases construing Section 1030(e)(6). As noted, the latter section has been construed adversely to Emerson, and Emerson has failed to show – or even to argue – that the Alabama Supreme Court would not construe Section 13A-8-111(11) along the lines of *Rodriguez*. The argument for such a construction may be even stronger under the Alabama statute, where the operative phrase is exceeding authorization of "use," not of

"access." Nor is it impossible to imagine that Alabama courts would construe "obtain … information" to include acquiring images of information found onscreen. Because Emerson offers no principled basis for concluding that its preferred reading is correct, its motion must fail.

## CONCLUSION

For the reasons set forth above, Emerson's motion to dismiss is **granted** as to Counts Three and Four; is **granted** as to Count Five to the extent based on Counts Three and Four; and is in all other respects **denied**.

DONE and ORDERED this 6th day of September, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE